Opinion for the court filed by Circuit Judge NEWMAN.
Dissenting opinion filed by Circuit Judge CLEVENGER.
NEWMAN, Circuit Judge.
U.S. Patent No. 5,511,122 (the '122 patent), entitled “Intermediate Network Authentication,” pertains to internet security, and is assigned to the United States of America represented by the Secretary of the Navy. The technology was developed by a scientist at the Naval Research Laboratory (NRL). The NRL permitted the patent to lapse for nonpayment of the 7.5-year maintenance fee. Two weeks after the lapse became effective, the NRL received an inquiry from the predecessor to Network Signatures, Inc. about licensing the patent. The NRL then petitioned the Patent and Trademark Office (PTO) to accept delayed payment of the fee; the PTO granted the petition. The '122 patent was duly licensed.
Network Signatures sued State Farm Mutual Automobile Insurance Company for infringement of the '122 patent. In defense, State Farm asserted that the patent was permanently unenforceable on the ground that the NRL patent attorney, John Karasek, had engaged in inequitable conduct by “falsely representing” to the PTO that the NRL’s non-payment of the maintenance fee was “unintentional.” The district court granted summary judgment of inequitable conduct, and held the patent unenforceable.[1] We conclude that the PTO Director acted in accordance with law and within his discretion in excusing the delayed payment, and that inequitable conduct was not established.
BACKGROUND
Mr. Karasek and his staff were responsible for managing the NRL’s patent portfolio, which “is typically around 700 patents at any given time.” The '122 patent was issued on April 23, 1996, and the period for paying the 7.5-year maintenance fee ended on April 23, 2004. See 37 C.F.R. § 1.362. *1241 Mr. Karasek explained that the NRL made maintenance fee payment decisions once or twice a year, and that “if there is an expression of interest, the NRL will pay the nominal maintenance fee,” but will “allow the patent to go abandoned” as a matter of “routine practice” absent any “identified commercial interest.” Karasek Deck ¶ 12 (Apr. 26, 2012).
Mr. Karasek stated that for the '122 patent, the NRL did not know of any commercial interest, and the 7.5-year fee was not paid. On May 10, 2004 — two weeks after the final payment date — Mr. Hazim Ansari of Network Signatures’ predecessor company telephoned Ms. Jane Kuhl at the NRL Technology Transfer Office, and inquired about licensing the '122 patent. Mr. Ansari told Ms. Kuhl that he had been trying to contact the NRL, but had been unable to reach anyone. Mr. Ansari later specified that he left a voicemail message with the Technology Transfer Office on April 5, 2004, and that he sent e-mails to that office on April 12 and 14, both of which “bounced back.”
Ms. Kuhl promptly told Mr. Karasek of the inquiry, and that same day, May 10, 2004, Mr. Karasek filed a petition with the PTO for delayed payment of the maintenance fee in accordance with 37 C.F.R. § 1.378(a). The petition was on the PTO’s standard form, which was pre-populated with the statement that “[t]he delay in payment of the maintenance fee to this patent was unintentional.” 37 C.F.R. § 1.378(c)(3). The petition provided for payment of the $2,090 maintenance fee and the $1,640 late payment surcharge. The PTO approved the delayed payment for the '122 patent during the week of May 17, 2004, see n.2, infra, the week after Mr. Karasek filed the petition. The NRL duly licensed the patent to Network Signatures.
In June 2011 Network Signatures brought this infringement suit against State Farm Mutual Automobile Insurance Company. State Farm moved for summary judgment of unenforceability of the '122 patent, on the ground that Mr. Kara-sek committed inequitable conduct in his request for delayed payment of the maintenance fee, because the delay was not “unintentional” in that the NRL paid the fee only after learning of Mr. Ansari’s interest.
Mr. Karasek testified that the late payment was indeed unintentional, for it resulted from a “mistake of fact.” The PTO has explained that “A distinction must be made between a mistake in fact, which may form the basis for a holding of unintentional abandonment...., and the arrival at a different conclusion after reviewing the same facts a second time.” In re Maldague, 10 U.S.P.Q.2d 1477, 1478 (Comm’r Pat.1989). Mr. Karasek stated that there was indeed a mistake of fact, for the NRL would have routinely paid the maintenance fee had it known of this commercial interest. Mr. Karasek stated:
It is ... a mistake of fact where a patent applicant learns of previously unknown facts that — had they been known previously and which were not unknown because of neglect of a legal duty— would have altered the decision to abandon. Here, the NRL was faced with previously unknown facts — Mr. An-sari’s earlier attempts to contact the NRL prior to abandonment to obtain a license to the '122 patent — facts that were unknown and unknowable at the time of April 23, 2004 due to the ... circumstances with the phone system and the gravely ill head of the TTO. These facts — had they been known— would have altered the NRL’s decision to abandon the '122 patent.
Karasek Decl. ¶ 19.
The district court held that this circumstance did not amount to a “mistake of *1242 fact,” citing the ruling of the Commissioner in In re Carlson that “[t]he discovery of additional information after making a deliberate decision to withhold a timely action is not the ‘mistake in fact’ that might form the basis for acceptance of a maintenance fee ... under the reasoning of Ma-Idague.” Carlson, 2003 WL 25523657, at *6 (Comm’r Pat. Jan. 24, 2003) (reconsidering 2002 decision). In Carlson the pat-entee had allowed the patent to lapse, and three months later learned of possible infringement and sought to revive the patent by late payment of the fee.
The district court found Carlson “to be most on point,” and held that the omission of “any evidence or explanation of why the delay was considered unintentional was but-for material.” D. Ct. Op. at *10. The court concluded that “there is no genuine issue of fact that Karasek withheld material information from the PTO with the specific intent to deceive it,” and ruled that the criteria of inequitable conduct were met. Id. at *12. This appeal followed.
Discussion
“To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO.” In re Rosuvastatin Calcium Patent Litig., 703 F.3d 511, 519 (Fed.Cir.2012) (citing Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1287 (Fed.Cir.2011) (en banc)). “Materiality and intent must be separately established.” Id.
The facts of materiality and intent must be established by clear and convincing evidence, for, as stated in Burlington Industries, Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed.Cir.1988), “summary judgment that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, rare indeed.” On appeal, we exercise plenary review of the district court’s grant of summary judgment. Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc., 583 F.3d 766, 770 (Fed.Cir.2009).
The district court stated that “While a close issue, the Court cannot conclude that Karasek’s statement rises to the level of affirmative egregiousness of the cases Therasense references.” D. Ct. Op. at *8. However, the district court found that Mr. Karasek intended to deceive the PTO, apparently by using the PTO’s standard form petition for “unintentional” delay without setting forth the details of how or why the delay occurred. We do not agree that this action constituted material misrepresentation with intent to deceive. “To establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation. To establish intent, intent to deceive the PTO must be the single most reasonable inference able to be drawn from the evidence.” Rosuvastatin, 703 F.3d at 519 (citations and internal quotation marks omitted).
Acceptance of late payment of maintenance fees is authorized by statute, 35 U.S.C. § 41(c)(1), and implemented by 37 C.F.R. § 1.378(a), which states that the Director
may accept the payment of any maintenance fee due on a patent after expiration of the patent if, upon petition, the delay in payment of the maintenance fee is shown to the satisfaction of the Director to have been unavoidable (paragraph (b) of this section) or unintentional (paragraph (c) of this section) and if the surcharge ... is paid as a condition of accepting payment of the maintenance fee.
*1243 The PTO provides a standard form for late payment. After legislative change enacted in 1992, the statute states that “unintentional” delay is sufficient ground for acceptance of late payment. See Late Payment of Maintenance Fees, Pub.L. No. 102-144, 106 Stat. 2245 (1992). Before 1992, § 41(c) required the petitioner to show that the late payment was “unavoidable,” and the pre-1992 regulation, 37 C.F.R. § 1.378, required the petitioner to “enumerate the steps taken to ensure timely payment.” The statute was amended on legislative recognition that “[t]he ‘unavoidable’ standard has proved to be too stringent in many cases. Many patentees have been deprived of their patent rights for failure to pay the maintenance fees for reasons that may have been unintentional yet not unavoidable.” H.R.Rep. No. 102-993, at 2 (1992), 1992 U.S.C.C.A.N. 1623, 1624.
The current regulation, 37 C.F.R. § 1.378(c)(3), requires only a statement that the delay was “unintentional.” The standard PTO form requires no details for “unintentional” delay, and contains the preprinted “statement” that: “The delay in payment of the maintenance fee to this patent was unintentional,” without requesting further detail.
Mr. Karasek acted promptly upon learning of commercial interest in the '122 patent, after only two weeks of delay. The record shows no irregularity in Mr. Kara-sek’s actions. He submitted the NRL petition on the form provided by the PTO; the form does not require a statement of the reasons for the initial non-payment and for the changed position. In Field Hybrids, LLC v. Toyota Motor Corp., No. 03-4121, 2005 WL 189710 (D.Minn. Jan. 27, 2005) the court held that there was not inequitable conduct in representing that the delay was unintentional, for the attorney “simply used the standard language required by federal regulations.” Id. at *9.
Mr. Karasek’s compliance with the standard PTO procedure for delayed payment, using the PTO form for delayed payment, does not provide clear and convincing evidence of withholding of material information with the intent to deceive the Director. On matters unrelated to the substantive criteria of patentability, but within the authority of the Director, “it is almost surely preferable for a reviewing court not to involve itself in the minutiae of Patent Office proceedings and to second-guess the Patent Office on procedural issues at every turn.” Laerdal Med. Corp. v. Ambu, Inc., 877 F.Supp. 255, 259 (D.Md.1995) (citation and internal quotation marks omitted).[2] We have rec *1244 ognized an “unwillingness to extinguish the statutory presumption of validity” where the patentee’s conduct “did not affect the issuance of the patent.” Therasense, 649 F.3d at 1291.
The district court’s summary judgment of inequitable conduct cannot stand. The judgment is reversed. The case is remanded for proceedings on the merits of the complaint.
REVERSED AND REMANDED.

. Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co., No. 11-cv-0982, 2012 WL 2357307 (C.D.Cal. June 13, 2012) (D. Ct. Op.).

. Our colleague in dissent argues that Mr. Karasek committed inequitable conduct by not explaining to the PTO the factual circumstances of the "unintentional” delay, although the PTO procedure and standard form do not require such explanation. 37 C.F.R. § 1.378(c) requires only "(3) A statement that the delay in payment of the maintenance fee was unintentional.” Mr. Karasek used the official form for delayed payment, and the Director accepted the payment. The PTO record lists the grant of such petitions; see, e.g., USPTO Official Gazette Notice of Delayed Payment of Maintenance Fee, 1283 OG 24 (June 15, 2004) (listing thirty-four patents including the '122 patent approved for delayed payment during the week of May 17, 2004); 1283 OG 23 (June 8, 2004) (listing thirty patents approved for delayed payment the week before the '122 patent); 1283 OG 25 (June 22, 2004) (listing twenty-six patents approved for delayed payment the week after the '122 patent). An examination of recently approved petitions confirms that such petitions are routinely filed and granted without explanation for the "unintentional” delay. The Official Gazette of August 13, 2013 lists thirty-six petitions, 1393 OG 85, twenty-one of which were available for our review. None of the reviewed petitions include a substantive discussion of "unintentional” delay by either the petitioner or the Director. The other fifteen petitions were not accessible electroni *1244 cally. The PTO grants petitions to excuse “unintentional” delay "automatically,” and in “real-time.” EFS-Web, Petition Under 1.378(c) Quick Start Guide, available at http:// www.uspto.gov/ebc/portal/efs/petition_1378c_ quickstart.pdf. Contrary to the dissent’s assertion, Mr. Karasek’s adherence to standard, well-established PTO procedure is not evidence of intent to deceive the Office.
The dissent also states that the “materiality” component of inequitable conduct need be shown by only a preponderance of the evidence when the information relates to patent-ability. However, the en banc court in Thera-sense stated that ”[t]he accused infringer must prove both elements — intent and materiality— by clear and convincing evidence.” 649 F.3d at 1287. The court did not distinguish among issues, when the charge was that the lawyer had committed inequitable conduct. The court in Therasense sought to ameliorate the opportunistic plague of personal attack and satellite litigation, by establishing a consistent standard.