# United States Court of Appeals for the Federal Circuit

---

**NETWORK SIGNATURES, INC.,**
*Plaintiff-Appellant,*

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
*Defendant-Appellee.*

---

2012-1492

---

Appeal from the United States District Court for the Central District of California in No. 11-CV-0982, Judge James V. Selna.

---

Decided: September 24, 2013

---

PETER R. AFRASIABI, One LLP, of Newport Beach, California, argued for plaintiff-appellant. With him on the brief was NATHANIEL L. DILGER.

ASHLEY C. PARRISH, King & Spalding, LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were R. WILLIAM BEARD, JR. and TRUMAN H. FENTON, of Austin, Texas; and ADAM M. CONRAD of Charlotte, North Carolina. Of counsel was DARYL L. JOSEFFER, of Washington, DC.

HOWARD S. SCHER, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for amicus curiae. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, and SCOTT R. MCINTOSH, Attorney.

———————————

Before NEWMAN, CLEVENGER, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* NEWMAN.

Dissenting opinion filed by *Circuit Judge* CLEVENGER.

NEWMAN, *Circuit Judge.*

U.S. Patent No. 5,511,122 (the '122 patent), entitled "Intermediate Network Authentication," pertains to internet security, and is assigned to the United States of America represented by the Secretary of the Navy. The technology was developed by a scientist at the Naval Research Laboratory (NRL). The NRL permitted the patent to lapse for nonpayment of the 7.5-year maintenance fee. Two weeks after the lapse became effective, the NRL received an inquiry from the predecessor to Network Signatures, Inc. about licensing the patent. The NRL then petitioned the Patent and Trademark Office (PTO) to accept delayed payment of the fee; the PTO granted the petition. The '122 patent was duly licensed.

Network Signatures sued State Farm Mutual Automobile Insurance Company for infringement of the '122 patent. In defense, State Farm asserted that the patent was permanently unenforceable on the ground that the NRL patent attorney, John Karasek, had engaged in inequitable conduct by "falsely representing" to the PTO that the NRL's non-payment of the maintenance fee was "unintentional." The district court granted summary judgment of inequitable conduct, and held the patent

unenforceable.[1]  We conclude that the PTO Director acted in accordance with law and within his discretion in excusing the delayed payment, and that inequitable conduct was not established.

BACKGROUND

Mr. Karasek and his staff were responsible for managing the NRL's patent portfolio, which "is typically around 700 patents at any given time."  The '122 patent was issued on April 23, 1996, and the period for paying the 7.5-year maintenance fee ended on April 23, 2004. *See* 37 C.F.R. §1.362.  Mr. Karasek explained that the NRL made maintenance fee payment decisions once or twice a year, and that "if there is an expression of interest, the NRL will pay the nominal maintenance fee," but will "allow the patent to go abandoned" as a matter of "routine practice" absent any "identified commercial interest."  Karasek Decl. ¶12 (Apr. 26, 2012).

Mr. Karasek stated that for the '122 patent, the NRL did not know of any commercial interest, and the 7.5-year fee was not paid.  On May 10, 2004—two weeks after the final payment date—Mr. Hazim Ansari of Network Signatures' predecessor company telephoned Ms. Jane Kuhl at the NRL Technology Transfer Office, and inquired about licensing the '122 patent.  Mr. Ansari told Ms. Kuhl that he had been trying to contact the NRL, but had been unable to reach anyone.  Mr. Ansari later specified that he left a voicemail message with the Technology Transfer Office on April 5, 2004, and that he sent e-mails to that office on April 12 and 14, both of which "bounced back."

Ms. Kuhl promptly told Mr. Karasek of the inquiry, and that same day, May 10, 2004, Mr. Karasek filed a

---

[1]    *Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 11-cv-0982, 2012 WL 2357307 (C.D. Cal. June 13, 2012) (D. Ct. Op.).

petition with the PTO for delayed payment of the maintenance fee in accordance with 37 C.F.R. §1.378(a). The petition was on the PTO's standard form, which was pre-populated with the statement that "[t]he delay in payment of the maintenance fee to this patent was unintentional." 37 C.F.R. §1.378(c)(3). The petition provided for payment of the $2,090 maintenance fee and the $1,640 late payment surcharge. The PTO approved the delayed payment for the '122 patent during the week of May 17, 2004, *see* n.2, *infra,* the week after Mr. Karasek filed the petition. The NRL duly licensed the patent to Network Signatures.

In June 2011 Network Signatures brought this infringement suit against State Farm Mutual Automobile Insurance Company. State Farm moved for summary judgment of unenforceability of the '122 patent, on the ground that Mr. Karasek committed inequitable conduct in his request for delayed payment of the maintenance fee, because the delay was not "unintentional" in that the NRL paid the fee only after learning of Mr. Ansari's interest.

Mr. Karasek testified that the late payment was indeed unintentional, for it resulted from a "mistake of fact." The PTO has explained that "A distinction must be made between a mistake in fact, which may form the basis for a holding of unintentional abandonment . . . , and the arrival at a different conclusion after reviewing the same facts a second time." *In re Maldague*, 10 U.S.P.Q.2d 1477, 1478 (Comm'r Pat. 1989). Mr. Karasek stated that there was indeed a mistake of fact, for the NRL would have routinely paid the maintenance fee had it known of this commercial interest. Mr. Karasek stated:

> It is . . . a mistake of fact where a patent applicant learns of previously unknown facts that—had they been known previously and which were not unknown because of neglect of a legal duty—

would have altered the decision to abandon.  Here, the NRL was faced with previously unknown facts—Mr. Ansari's earlier attempts to contact the NRL prior to abandonment to obtain a license to the '122 patent—facts that were unknown and unknowable at the time of April 23, 2004 due to the . . . circumstances with the phone system and the gravely ill head of the TTO.  These facts—had they been known—would have altered the NRL's decision to abandon the '122 patent.

Karasek Decl. ¶19.

The district court held that this circumstance did not amount to a "mistake of fact," citing the ruling of the Commissioner in *In re Carlson* that "[t]he discovery of additional information after making a deliberate decision to withhold a timely action is not the 'mistake in fact' that might form the basis for acceptance of a maintenance fee . . . under the reasoning of *Maldague*."  *Carlson,* 2003 WL 25523657, at *6 (Comm'r Pat. Jan. 24, 2003) (reconsidering 2002 decision). In *Carlson* the patentee had allowed the patent to lapse, and three months later learned of possible infringement and sought to revive the patent by late payment of the fee.

The district court found *Carlson* "to be most on point," and held that the omission of "any evidence or explanation of why the delay was considered unintentional was but-for material."  D. Ct. Op. at *10.  The court concluded that "there is no genuine issue of fact that Karasek withheld material information from the PTO with the specific intent to deceive it," and ruled that the criteria of inequitable conduct were met.  *Id.* at *12.  This appeal followed.

## DISCUSSION

"To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information

material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc)). "Materiality and intent must be separately established." *Id.*

The facts of materiality and intent must be established by clear and convincing evidence, for, as stated in *Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988), "summary judgment that a reputable attorney has been guilty of inequitable conduct, over his denials, ought to be, and can properly be, rare indeed." On appeal, we exercise plenary review of the district court's grant of summary judgment. *Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc.*, 583 F.3d 766, 770 (Fed. Cir. 2009).

The district court stated that "While a close issue, the Court cannot conclude that Karasek's statement rises to the level of affirmative egregiousness of the cases *Therasense* references." D. Ct. Op. at *8. However, the district court found that Mr. Karasek intended to deceive the PTO, apparently by using the PTO's standard form petition for "unintentional" delay without setting forth the details of how or why the delay occurred. We do not agree that this action constituted material misrepresentation with intent to deceive. "To establish materiality, it must be shown that the PTO would not have allowed the claim but for the nondisclosure or misrepresentation. To establish intent, intent to deceive the PTO must be the single most reasonable inference able to be drawn from the evidence." *Rosuvastatin*, 703 F.3d at 519 (citations and internal quotation marks omitted).

Acceptance of late payment of maintenance fees is authorized by statute, 35 U.S.C. §41(c)(1), and implemented by 37 C.F.R. §1.378(a), which states that the Director

> may accept the payment of any maintenance fee due on a patent after expiration of the patent if, upon petition, the delay in payment of the maintenance fee is shown to the satisfaction of the Director to have been unavoidable (paragraph (b) of this section) or unintentional (paragraph (c) of this section) and if the surcharge . . . is paid as a condition of accepting payment of the mainte-nance fee.

The PTO provides a standard form for late payment. After legislative change enacted in 1992, the statute states that "unintentional" delay is sufficient ground for acceptance of late payment. *See* Late Payment of Maintenance Fees, Pub. L. No. 102-444, 106 Stat. 2245 (1992). Before 1992, §41(c) required the petitioner to show that the late payment was "unavoidable," and the pre-1992 regulation, 37 C.F.R. §1.378, required the peti-tioner to "enumerate the steps taken to ensure timely payment." The statute was amended on legislative recog-nition that "[t]he 'unavoidable' standard has proved to be too stringent in many cases. Many patentees have been deprived of their patent rights for failure to pay the maintenance fees for reasons that may have been unin-tentional yet not unavoidable." H.R. Rep. No. 102-993, at 2 (1992).

The current regulation, 37 C.F.R. §1.378(c)(3), re-quires only a statement that the delay was "unintention-al." The standard PTO form requires no details for "unintentional" delay, and contains the preprinted "statement" that: "The delay in payment of the mainte-nance fee to this patent was unintentional," without requesting further detail.

Mr. Karasek acted promptly upon learning of com-mercial interest in the '122 patent, after only two weeks of delay. The record shows no irregularity in Mr. Karasek's actions. He submitted the NRL petition on the form

provided by the PTO; the form does not require a statement of the reasons for the initial non-payment and for the changed position. In *Field Hybrids, LLC v. Toyota Motor Corp.*, No. 03-4121, 2005 WL 189710 (D. Minn. Jan. 27, 2005) the court held that there was not inequitable conduct in representing that the delay was unintentional, for the attorney "simply used the standard language required by federal regulations." *Id.* at *9.

Mr. Karasek's compliance with the standard PTO procedure for delayed payment, using the PTO form for delayed payment, does not provide clear and convincing evidence of withholding of material information with the intent to deceive the Director. On matters unrelated to the substantive criteria of patentability, but within the authority of the Director, "it is almost surely preferable for a reviewing court not to involve itself in the minutiae of Patent Office proceedings and to second-guess the Patent Office on procedural issues at every turn." *Laerdal Med. Corp. v. Ambu, Inc.*, 877 F. Supp. 255, 259 (D. Md. 1995) (citation and internal quotation marks omitted).[2]   We have recognized an "unwillingness to

---

[2]   Our colleague in dissent argues that Mr. Karasek committed inequitable conduct by not explaining to the PTO the factual circumstances of the "unintentional" delay, although the PTO procedure and standard form do not require such explanation. 37 C.F.R. §1.378(c) requires only "(3) A statement that the delay in payment of the maintenance fee was unintentional." Mr. Karasek used the official form for delayed payment, and the Director accepted the payment. The PTO record lists the grant of such petitions; *see, e.g.,* USPTO Official Gazette Notice of Delayed Payment of Maintenance Fee, 1283 OG 24 (June 15, 2004) (listing thirty-four patents including the '122 patent approved for delayed payment during the week of May 17, 2004); 1283 OG 23 (June 8, 2004) (listing thirty patents approved for delayed payment the week before

extinguish the statutory presumption of validity" where the patentee's conduct "did not affect the issuance of the patent." *Therasense*, 649 F.3d at 1291.

---

the '122 patent); 1283 OG 25 (June 22, 2004) (listing twenty-six patents approved for delayed payment the week after the '122 patent). An examination of recently approved petitions confirms that such petitions are routinely filed and granted without explanation for the "unintentional" delay. The Official Gazette of August 13, 2013 lists thirty-six petitions, 1393 OG 85, twenty-one of which were available for our review. None of the reviewed petitions include a substantive discussion of "unintentional" delay by either the petitioner or the Director. The other fifteen petitions were not accessible electronically. The PTO grants petitions to excuse "unintentional" delay "automatically," and in "real-time." EFS-Web, Petition Under 1.378(c) Quick Start Guide, *available at* http://www.uspto.gov/ebc/portal/efs/petition_1378c_quickstart.pdf. Contrary to the dissent's assertion, Mr. Karasek's adherence to standard, well-established PTO procedure is not evidence of intent to deceive the Office.

The dissent also states that the "materiality" component of inequitable conduct need be shown by only a preponderance of the evidence when the information relates to patentability. However, the en banc court in *Therasense* stated that "[t]he accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." 649 F.3d at 1287. The court did not distinguish among issues, when the charge was that the lawyer had committed inequitable conduct. The court in *Therasense* sought to ameliorate the opportunistic plague of personal attack and satellite litigation, by establishing a consistent standard.

The district court's summary judgment of inequitable conduct cannot stand. The judgment is reversed. The case is remanded for proceedings on the merits of the complaint.

**REVERSED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**NETWORK SIGNATURES, INC.,**
*Plaintiff-Appellant,*

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**
*Defendant-Appellee.*

---

2012-1492

---

Appeal from the United States District Court for the Central District of California in No. 11-CV-0982, Judge James V. Selna.

---

CLEVENGER, *Circuit Judge*, dissenting.

I respectfully dissent from the majority's reversal of summary judgment of inequitable conduct. I believe the district court was correct in granting summary judgment to State Farm on materiality, but should not have granted summary judgment on intent. Because there are material facts regarding Mr. Karasek's intent to deceive the Patent and Trademark Office (PTO) in dispute, I would remand the issue of intent to the district court for a trial on the merits.

I. MATERIALITY

"The materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc). The majority states that "the PTO Director acted in accordance with law and within his discretion in excusing the delayed payment," Maj. Op. at 3, but the PTO director's past action is not in question. The correct question on materiality is whether the PTO would have granted Karasek's revival petition if he had disclosed the circumstances surrounding the revival. *Therasense*, 649 F.3d at 1291-92. Because I believe that State Farm has shown[1]

---

[1] There is some dispute in our post-*Therasense* case law over the correct standard of proof on materiality. *Compare Aventis Pharma S.A. v. Hospira, Inc.,* 675 F.3d 1324, 1334 (Fed. Cir. 2012) (applying the preponderance standard) *with In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (applying a clear and convincing standard). In *Therasense* we faced a situation involving the withholding of prior art, and adopted a preponderance standard to accord with the PTO's hypothetical review of the prior art during patent prosecution. *Therasense*, 649 F.3d at 1291-92 ("[I]n assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard . . . ."). *Therasense* also addressed our older unclean hands doctrine, which required "[t]he accused infringer [to] prove both elements—intent and materiality—by clear and convincing evidence." *Id.* at 1287. In this case, we are not evaluating withheld prior art, but rather information withheld post-issuance. At least two post-*Therasense* cases involving inequitable conduct not related to patentability used a clear and convincing evidence standard. *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285,

that the PTO would have denied Karasek's petition, I would affirm the grant of summary judgment on materiality.

The relevant facts on materiality are not in dispute. The Navy made a deliberate decision not to pay the 7.5 year maintenance fee for the '122 Patent, and the '122 Patent expired on April 23, 2004. Several days later, Karasek learned that Hazim Ansari had attempted to contact the Naval Research Laboratory (NRL) about licensing the patent. No one at the NRL received or appreciated these messages. On the same day that Karasek received this second-hand information, he filed a revival petition with the PTO stating that the '122 Patent was unintentionally abandoned. Karasek did not include any information about Mr. Ansari's contacts with the NRL or inform the PTO of the NRL's original intentional decision to abandon the patent. Over one month later, Karasek received a letter from Mr. Ansari stating that "[o]n April 5th, we called the general number of the NRL Office of Technology Transfer and asked to speak to a person about the '122 Patent" and "[o]n April 12th, we sent an email expressing interest in the '122 Patent to [the NRL's general email address] . . . ." J.A. 443.

1294 (Fed. Cir. 2012) (false declaration of small entity status); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1235 (Fed. Cir. 2011) (failure to update Petition to Make Special). I would clarify that where inequitable conduct involves withheld prior art, it is correct to apply the preponderance standard. In cases such as this one, involving information not related to patentability, I would apply a clear and convincing evidence standard to materiality. Regardless, I would find for State Farm on materiality under either standard.

Network Signatures, relying on cases such as *In re Patent No. 6,118,582*, 2006 WL 4926249 (Comm'r Pat. June 13, 2006) and *In re Maldague*, 10 U.S.P.Q.2d 1477, 1478 (Comm'r Pat. 1988), argues that the above facts present a "mistake of fact" scenario and the PTO would have granted the revival petition had Karasek disclosed them to the PTO. State Farm disagrees, and argues that this situation is indistinguishable from cases such as *In re Patent of Carlson*, 2003 WL 25523657 (Comm'r Pat. Jan. 24, 2003) and *In re Patent No. 5,181,974*, 2007 WL 4974450 (Comm'r Pat. Aug. 17, 2007), where the PTO denied revival under a mistake of fact theory.

The PTO's cases do suggest that a petitioner can rely on a mistake of fact to revive an expired patent, but Network Signatures cannot cite to any case where the PTO actually granted revival under this theory. In *Carlson*, the PTO denied a revival petition because

> [t]he discovery of additional information after making a deliberate decision to withhold a timely action is not the "mistake in fact" that might form the basis for acceptance of a maintenance fee . . . . The discovery of additional, other information is simply a change in circumstances that occurred subsequent to the expiration of the patent.

2003 WL 25523657, at *6.

*In re '974* also reaches the same conclusion. In that case, the patentee allowed the patent to go abandoned when he failed to recognize that the patent was the subject of a pre-existing license agreement. *In re '974*, 2007 WL 4974450, at *3. The PTO denied revival, holding that "intentional action or inaction [in paying a maintenance fee] precludes a finding of unintentional delay, even if the agent-representative made his decision not to timely take the necessary action in a good faith error." *Id.* at *4.

The regulatory history of the unintentional revival rules also supports the rejection of Karasek's petition. In its Final Rule notice, the PTO explained when a petition for unintentional abandonment of a patent application will not be granted:

> Where the applicant *deliberately permits an application to become abandoned* (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or *that the invention lacks sufficient commercial value to justify continued prosecution*), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as "unintentional" within the meaning of § 1.137(b). . . . An intentional delay resulting from a deliberate course of action chosen by the applicant is not affected by: (1) The correctness of the applicant's (or applicant's representative's) decision to abandon the application or not to seek or persist in seeking revival of the application; (2) the correctness or propriety of a rejection, or other objection, requirement, or decision by the Office; or (3) *the discovery of new information or evidence,* or other change in circumstances subsequent to the abandonment or decision not to seek or persist in seeking revival.

*See* Changes to Patent Practice and Procedure, 62 Fed. Reg. 53132, 53158-59 (Oct. 10, 1997) (to be codified at 37 C.F.R. pt. 1) (discussing the meaning of "unintentional" delay in the context of the revival of an abandoned application) (emphasis added); *see also* MPEP § 711.03(c)(II)(C)(1) (8th ed. Rev. 9, Aug. 2012). The PTO treats unintentional revival of a patent application in the same manner as unintentional revival of an issued patent. *See In re '974*, 2007 WL 4974450, at *3-4.

The case before us today is no different from *Carlson* or *In re '974*—the '122 Patent was the subject of a pre-existing indication of commercial interest, which the NRL failed to appreciate. Network Signatures attempts to distinguish these cases by arguing that the unappreciated facts in *Carlson* and *In re '974* were available to the petitioner at the time of the decision to abandon, but here the NRL could not know about Mr. Ansari's interest in the patent. I would not excuse the NRL's ignorance on the basis of a malfunction of its phone system and the illness of an employee at the time of Mr. Ansari's contact with the office. Maj. Op. at 4. Mr. Ansari left messages with the NRL's general number and email address, and the NRL's failure to receive or act on those messages cannot negate its deliberate decision to abandon the '122 Patent.

Essentially, the NRL would like to invoke a mistake of fact defense when the reason it failed to learn of Mr. Ansari's commercial interest in the '122 Patent was of their own making. In *In re '974* the PTO chose not to excuse a lawyer's failure to appreciate the existence of a license. Similarly, in *In re '582* the PTO would not excuse a patentee's failure to "investigate all patent matters in which [the patentee] had a stake before making a decision thereabout." *In re '582*, 2006 WL 4926249, at *5. Network Signatures has not found a single case where the PTO granted a revival petition based on a mistake of fact, and nothing in the PTO's cases suggest that it would have excused the NRL's neglect of multiple phone and email messages.

Network Signatures cannot distinguish itself from the PTO's clear line of revival decisions, and I would affirm the district court's finding that Karasek's failure to disclose the facts surrounding the revival petition was material. While the majority believes that Karasek complied "with the standard PTO procedure for delayed payment," Maj. Op. at 8, the cases above demonstrate that the appropriate procedure is to disclose the petitioner's basis

for believing a deliberate abandonment was unintentional. The PTO's practice of granting unintentional revival petitions as a matter of course is not the issue. Maj. Op. at 8 n.2. The problem is that Karasek knew the NRL patent was intentionally abandoned and did not alert the PTO to that fact. The PTO's practice of granting such petitions automatically cuts against Karasek on the issue of intent to deceive; it does not negate the materiality of his actions. If the PTO had known the true facts, I have no doubt whatsoever that Karasek's revival petition would have been denied.

## II. INTENT

To prevail on summary judgment of intent to deceive the PTO, State Farm must prove by clear and convincing evidence that (1) Karasek knew of the withheld information, (2) knew that the information was material, and (3) made a deliberate decision to withhold it. To meet the clear and convincing evidence standard, a specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." *Therasense*, 649 F.3d at 1290.

In this case, the parties do not dispute that Karasek knew of the withheld information. The parties hotly dispute whether Karasek knew the information was material and made a deliberate decision to withhold it from the PTO.

While I do not believe that these issues cannot be resolved against Karasek on summary judgment, I cannot foreclose the possibility that State Farm could produce evidence sufficient to meet the *Therasense* standard at a merits trial. For example, Karasek's statement that he never considered filing a supplemental statement with the revival petition rings hollow in light of his review of several PTO cases which included supplemental statements. *See* J.A. 344. The evidence that Karasek knew the PTO granted revival petitions as a matter of course also

suggests that he deliberately decided to withhold information. *Id.* at 17-18.

However, at the summary judgment stage we must take the facts in the light most favorable to Network Signatures. State Farm has not shown that the "single most reasonable inference" to be drawn is that Karasek intended to deceive the PTO. At the summary judgment stage, another reasonable inference is that Karasek honestly, although misguidedly, believed that the PTO would grant his revival petition even if he did disclose the surrounding circumstances. This would make Karasek negligent, but negligence does not rise to the level of deliberately deceiving the PTO under *Therasense.* 649 F.3d at 1290.

## III

The correct result in this appeal is a remand to the trial court on intent and an affirmance on materiality. I see nothing within the PTO's cases on unintentional revival suggesting that the PTO would excuse NRL's deliberate decision to abandon the '122 Patent simply because the NRL failed to check its messages. I also see disputed facts suggesting that the NRL's lawyer deliberately withheld information from the PTO, knowing that the PTO would grant his revival petition if he remained silent. Because the majority does not agree with me, I respectfully dissent.